# FOR PUBLICATION

FILED & ENTERED

JAN 31 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY moser    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re<br><br>USA Sales, Inc.<br><br>　　　　　　　　　　Debtor(s). | Case No.: 6:16-bk-14576-MW<br><br>Chapter: 11<br><br>**MEMORANDUM DECISION AND ORDER GRANTING DEBTOR'S MOTION TO DETERMINE WHETHER BOARD OF EQUALIZATION CLAIM IS ENTITLED TO PRIORITY STATUS UNDER SECTION 507(a)(8)**<br><br>Hearing:<br>Date:　November 14, 2017<br>Time:　2:00 p.m.<br>Place:　3420 Twelfth Street<br>　　　　Video Courtroom 225<br>　　　　Riverside, CA 92501<br>　　　　　　or<br>　　　　411 West Fourth Street<br>　　　　Courtroom 6C<br>　　　　Santa Ana, CA 92701 |

A. Lavar Taylor and Lisa O. Nelson of Law Offices of A. Lavar Taylor, LLP for Debtor USA Sales, Inc.

Ronald N. Ito, Deputy Attorney General, for California State Board of Equalization, now the California Department of Tax And Fee Administration

1

**WALLACE, J.**

The matter before the Court is chapter 11 debtor USA Sales, Inc.'s Motion to Determine Whether Board of Equalization Claim is Entitled to Priority Status Under Section 507(a)(8) (the "Motion"). The claim in question relates to excise taxes in the amount of $1,505,638.57 on cigarettes distributed by USA Sales, Inc. ("Debtor") in 2007 and 2008. Debtor contends that such taxes are not entitled to eighth priority status under the Bankruptcy Code and that the underlying claim should be held to be merely a general unsecured claim. The California Department of Tax and Fee Administration ("CDTFA"), successor in interest to the California State Board of Equalization ("SBOE"),[1] takes the opposite position, contending that such taxes are entitled to eighth priority status under 11 U.S.C. § 507(a)(8)(E) and advocating denial of the Motion with prejudice.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 157, 1334. Venue is proper under 28 U.S.C. § 1408. This is a core matter under 28 U.S.C. § 157(b)(2)(B).

## PROCEDURAL SETTING OF THE MOTION

Debtor commenced an adversary proceeding against the SBOE on December 22, 2016 for a determination of the amount of cigarette taxes owed by Debtor for 2007 and 2008 tax periods. This adversary proceeding was assigned Case No. 6:16-ap-01302-MW. Federal Rule of Bankruptcy Procedure 3007(b) expressly allows a claim objection to be made in an adversary proceeding. However, rather than amend the complaint to challenge the priority of the CDTFA's claim as well as its amount, Debtor chose to proceed by filing the Motion in the Debtor's main bankruptcy case.

---

[1] Effective as of July 1, 2017, the Taxpayer Transparency and Fairness Act of 2017 created the CDTFA and caused it to assume the duties, powers and responsibilities of the SBOE. It was contemplated that the CDTFA would be substituted for the SBOE in pending actions. Supplemental Response of Creditor California Department of Tax and Fee Administration to Debtor's Motion to Determine Whether the Board of Equalization is Entitled to Priority Under Section 507(a)(8), Docket No. 220, filed December 1, 2017 at page 7 of 24, lines 24-27 (the "CDTFA Response"). In this Memorandum Decision and Order, the Court will refer to the SBOE if it was the SBOE that performed an action, such as filing a pleading in this case or issuing a decision, and to the CDTFA if, effective on and after July 1, 2017, it was the CDTFA that performed an action or made an argument.

Although styled as a motion, the Motion is in substance an objection to a claim in which the Debtor argues for the reclassification of the CDTFA's claim (evidenced by Proof of Claim No. 11, filed August 4, 2016) from an eighth priority claim to a general unsecured claim. As such, the claim objection is governed by Federal Rule of Bankruptcy Procedure 3007, Local Bankruptcy Rule 3007-1 and case law relating to the adjudication of claim objections.[2]

A timely proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). A properly executed and filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Here, the Debtor has objected to the claim. To defeat the claim, the Debtor must come forward with sufficient evidence and show facts tending to defeat the claim by probative force equal to that of the proof of claim allegations. *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000) (citing *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991)); *Zipser v. Ocwen Loan Servicing, LLC (In re Zipser)*, No. CC-15-1258-FTaKu, 2016 Bankr. LEXIS 919, at *11-14 (B.A.P. 9th Cir. Mar. 23, 2016), *aff'd,* 699 F. App'x 673 (9th Cir. 2017).

In non-tax claim matters, if a party objecting to a claim has met the burden of going forward, the burden then shifts back to claimant, which must prove its claim by a preponderance of the evidence. *Lundell* at 1039 (citing *Ashford v. Consol. Pioneer Mortg. (In re Consol. Pioneer)*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995)); *Zipser v. Ocwen Loan Servicing, LLC (In re Zipser)*, No. CC-15-1258-FTaKu, 2016 Bankr. LEXIS 919, at *11-14 (B.A.P. 9th Cir. Mar. 23, 2016), *aff'd,* 699 F. App'x 673 (9th Cir. 2017). In matters involving tax claims, however, the applicable rule is quite different. The Supreme Court of the United States has held that in bankruptcy court the taxpayer has the burden of proof on a state tax claim if under applicable state law the burden of proof would have been on the taxpayer had the taxpayer not been in a bankruptcy proceeding. *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 17, 120 S. Ct. 1951, 1953 (2000). In California, the taxpayer has the burden of proof in

---

[2] No arguments were raised by any party as to compliance with the various time requirements of Federal Rule of Bankruptcy Procedure 3007 or Local Bankruptcy Rule 3007-1, and the Court accordingly views any such argument as waived.

1  proceedings before the SBOE and in any subsequent suit for a tax refund.  *Parmar v. Board
2  of Equalization*, 196 Cal. App. 4th 705, 720 (Ct. App. 2d Dist. 2011); *Paine v. State Bd. of
3  Equalization*, 137 Cal. App. 3d 438, 442 (Ct. App. 3d Dist. 1982); *Riley B's, Inc. v. State Bd.
4  of Equalization*, 61 Cal. App. 3d 610, 616 (Ct. App. 2d Dist. 1976).  Accordingly, the Court
5  assigns the burden of proof by a preponderance of the evidence in this matter to Debtor.

## FACTUAL BACKGROUND

7        The factual background relating to this matter is largely undisputed.  Debtor is
8  engaged in the business of selling and distributing cigarettes and tobacco products on a
9  wholesale basis.  The State of California's Cigarette and Tobacco Products Tax Law imposes
10 a tax on the distribution of cigarettes and tobacco products.  CAL. REV. & TAX. CODE §§ 30001
11 *et seq.*  California law requires a person who engages in the distribution of cigarettes or
12 tobacco products to apply for and obtain a license, file a tax return (or report) on or before the
13 25th day of each calendar month reporting the distribution of cigarettes or tobacco products
14 during the preceding month and pay the applicable tax.  CAL. REV. & TAX. CODE §§ 30101,
15 30123, 30131.2, 30182.  The tax is paid by purchasing cigarette tax stamps and then affixing
16 such tax stamps to the package containing the cigarettes being distributed.  CAL. REV. & TAX.
17 CODE § 30161.  The tax is imposed and calculated on the basis of the number of cigarettes
18 distributed in California (i.e., on a per cigarette stick basis).  CAL. REV. & TAX. CODE § 30101.
19       The SBOE conducted an audit in 2010 of Debtor's cigarette tax returns for the period
20 January 16, 2007 through November 30, 2008.  On November 24, 2010, the SBOE
21 determined that Debtor had underpaid its cigarette taxes by $1,266,402.  Specifically, the
22 SBOE determined that Debtor had distributed 29,112,690 cigarette sticks without paying tax
23 thereon at the rate of 4.35 cents per cigarette stick.  The Debtor timely filed a petition for
24 redetermination of the tax deficiency on December 21, 2010 with the Appeals Division of the
25 SBOE. This petition contested Debtor's <u>liability</u> for the taxes.  The petition did not contest or
26 dispute <u>collection</u> of the taxes because, as discussed below, the taxes had not yet become
27 due and payable during the audit process and were not expected to become payable while
28 the petition for redetermination was pending before the SBOE's Appeals Division.  CAL. REV.

& TAX. CODE § 30264 (tax deficiencies do not become due and payable until the SBOE's determination becomes final).

Under the California statutory scheme for the administration of cigarette distribution taxes, the SBOE was required to reconsider the SBOE audit division's determination of the Debtor's cigarette tax liability and, if requested, to grant the Debtor a hearing. CAL. REV. & TAX. CODE § 30262. The SBOE held a hearing on Debtor's petition for redetermination on March 5, 2015.

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on May 20, 2016. As of this point in time, the SBOE's Appeals Division had not yet rendered a decision on the Debtor's petition for redetermination of the tax deficiency determined by the SBOE's audit division. Accordingly, the tax deficiency at issue was not yet due and payable as of the petition date.

Five days later, on May 25, 2016, The SBOE's Appeals Division issued its Decision and Recommendation (the "SBOE Decision") granting in part and denying in part Debtor's petition for redetermination of the proposed tax deficiency. The SBOE Decision is a lengthy 21-page analysis of the Debtor's <u>liability</u> to the State of California for cigarette distribution taxes for the period January 16, 2007 through November 30, 2008. No part of the SBOE Decision discusses the <u>collection</u> of these taxes. Indeed, the SBOE Decision does not even state or otherwise set forth a specific number for the amount of the cigarette distribution tax deficiency, leaving this matter for the SBOE audit division to calculate. The concluding paragraph of the SBOE Decision states as follows:

> We recommend a reaudit to allow the Department to reduce petitioner's purchases of unstamped cigarettes (audit schedule 9B-1) by 8,109,630 sticks and petitioner's allowed distributions in interstate or foreign commerce by 864,000 sticks, and to recalculate the measure and tax due. In all other respects, we recommend the appeal be denied.

Although details are sparse, it would appear that the SBOE audit division recalculated the taxes based upon the SBOE Decision and used that information to prepare the Proof of Claim that is the subject of the Motion.

The Court notes in passing that neither the postpetition issuance of the SBOE Decision nor the recalculation of the tax deficiency violated the automatic stay. Pursuant to 11 U.S.C. § 362(b)(9), a governmental unit (here, the SBOE) is permitted to conduct an audit to determine tax liability, assess a tax, issue the debtor a notice of tax deficiency and a notice and demand for payment, all without violating the automatic stay.

The Motion contends that although the SBOE filed Proof of Claim No. 11 for the cigarette taxes at issue here, such taxes have not yet been formally assessed. Motion at page 5 of 15, lines 14-15. The CDTFA does not appear to contest this point, but the point is not especially important. A taxing authority is entitled to file a proof of claim even though no taxes have been assessed. The definition of claim in 11 U.S.C. § 101(5) is broad enough to permit this. Moreover, as will be seen below, the priority (or non-priority) status of the cigarette taxes in no way depends upon the existence of an assessment or the date of an assessment but instead is tied to the date the tax return for reporting such taxes was last due, including extensions.

The cigarette taxes that are the subject of Proof of Claim No. 11 were not due and payable at any time before the petition date. Under California Revenue and Taxation Code section 30264, cigarette taxes under audit by the SBOE do not become due and payable until the SBOE's determination of the amount of such taxes becomes final. As noted above, the SBOE Decision was not rendered until <u>after</u> the petition date (and even as of the petition date a final determination had not yet occurred because the SBOE audit division was under instructions from the SBOE Appeals Division to recalculate the tax based upon the Appeals Division's findings and conclusions as set forth in the SBOE Decision).

**THE PRIORITY STATUS OF EXCISE TAXES UNDER THE BANKRUPTCY CODE**

The Debtor contends, and the CDTFA agrees,[3] that the taxes at issue here are "excise taxes" within the meaning of 11 U.S.C. § 507(a)(8)(E). An excise tax for this purpose is a tax obligation imposed upon the performance of an act, the engaging in an occupation or

---

[3] CDTFA Response at pages 11 – 12 of 24.

the enjoyment of a privilege. *In re United Healthcare Sys., Inc.,* 282 B.R. 330 (Bankr. D.N.J. 2002). Here, the tax is imposed on the performance of an act, namely, the distribution of cigarettes and tobacco products. Thus, the Court agrees with the parties' analysis that the taxes claimed by the CDTFA to be due and owing constitute "excise taxes" within the meaning of 11 U.S.C. § 507(a)(8)(E).

Section 507(a)(8)(E) awards eighth priority status to an excise tax on

    (i)    a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or

    (ii)    if a return is not required, a transaction occurring during the three years immediately preceding the date of filing of the petition.

As a preliminary matter, it should be noted that the excise taxes in question here are imposed with respect to cigarettes distributed by the Debtor in 2007 and 2008 – more than seven years before the May 20, 2016 petition date. In that sense, these are "old taxes," leading to the question of whether they are too old to be entitled to priority under section 507(a)(8)(E).

## ARGUMENTS AND CONTENTIONS OF THE CDTFA

The CDTFA makes two arguments attempting to show that the taxes are not too old to be entitled to eighth priority status.

    1. <u>Are the Cigarette Distribution Taxes Eighth Priority Excise Taxes Within the Meaning of 11 U.S.C. § 507(a)(8)(E)(ii)?</u>

The CDTFA argues that the excise taxes at issue here fall under section 507(a)(8)(E)(ii), not section 507(a)(8)(E)(i), and that there was no "transaction" until the SBOE Decision became final on May 25, 2016.[4] The CDTFA bases these contentions on *In re Lorber Indus. of Cal.*, 357 B.R. 617, 623-24 (Bankr. C.D. Cal. 2006) which (according to

---

[4] CDTFA Response at page 12 of 24.

1  the CDTFA) held that the date on which a particular tax was assessed can be examined to
2  determine what the relevant "transaction" was within the meaning of section 507(a)(8)(E)(ii).[5]
3        The Court rejects this analysis for two independent reasons.  Section 507(a)(8)(E)(ii)
4  applies only if "a return is not required."  Here, a tax return is required to be filed:  California
5  Revenue and Taxation Code section 30182(a) expressly provides that ". . . a distributor shall
6  file, on or before the 25th day of each month, a report in the form as prescribed by the
7  [SBOE] . . . with respect to distributions of cigarettes and purchases of stamps and meter
8  register units during the preceding month and any other information as the [SBOE] may
9  require to carry out this part."  This fact standing alone takes the excise taxes out of section
10 507(a)(8)(E)(ii) and places them within section 507(a)(8)(E)(i) (if they otherwise meet the
11 requirements of subparagraph (i)).  No explanation is offered or provided by the CDTFA as to
12 why, despite the plain language of section 30182(a), no tax return is required with respect to
13 the cigarette distribution taxes at issue within the meaning of Bankruptcy Code section
14 507(a)(8)(E)(ii).[6]
15       Second, *Lorber Industries* does not support the CDTFA's analysis.  In *Lorber*
16 *Industries*, the debtor was permitted to self-insure for worker's compensation claims
17 after receiving the consent of the California Director of Industrial Relations.  In this situation,
18 the California Director of Industrial Relations possessed the authority under California law to
19 order the California Self-Insurers' Fund (the "Fund") to pay the debtor's worker's
20 compensation claims if the debtor failed to pay these claims itself and, in that event, the Fund
21 had the right to seek reimbursement from the debtor for claims paid by the Fund.  The debtor
22 failed to pay certain claims, and the Fund assumed the debtor's obligations and filed a proof
23 of claim for reimbursement in the debtor's chapter 11 proceeding.  The bankruptcy court held
24 that the Fund's claim constituted an excise tax and that the "relevant transaction in this case

---

[5] CDTFA Response at page 12 of 24, lines 16-23.
[6] Even if it were the case that the "report" referenced by section 30182(a) does not constitute a "return" within the meaning of 11 U.S.C. § 507(a)(8)(E)(i) - - a dubious proposition in any event - - the decision here would remain unaltered because the relevant "transaction" is the distribution of cigarettes in 2007 and 2008 (more than 3 years before the petition date) and, as shown later, there is no tolling under the flush language of 11 U.S.C. § 507(a)(8).

would be when the Debtor applied for and was granted self-insured status." 357 B.R. at 624. Because this occurred in 1992, it was outside the three-year period of section 507(a)(8)(E)(ii), and the Fund's claim was determined to be a non-priority general unsecured claim.

*Lorber Industries* is distinguishable from this case because no return was required to be filed by the debtor with respect to its liability or potential liability to the Fund. Here, as discussed above, the Debtor was obligated under California law to file tax returns reporting the distribution cigarettes and tobacco products.

Even if *Lorber Industries* were to apply, there is no indication in the decision that the date of the "transaction" was when the Fund quantified the amount of its right to payment from the debtor. Indeed, to the contrary, the bankruptcy court determined the "transaction" to be totally divorced and separate from the quantification or estimation of liability and instead determined it to be the approval of the application to self-insure.

Contrary to the CDTFA's contention, the "transaction" here for purposes of 11 U.S.C. § 507(a)(8)(E) is not the final audit deficiency determination by the SBOE of the cigarette taxes allegedly owed by Debtor. The California Cigarette and Tobacco Products Tax Law does not impose a tax on the transaction of making an audit deficiency determination with respect to cigarette and tobacco products; it imposes a tax on distributing cigarettes and tobacco products. The SBOE's (or CDTFA's) "right to payment" within the meaning of the Bankruptcy Code arose when the Debtor distributed the cigarettes in 2007 and 2008, not when the amount of the taxes for such distribution was quantified on a final basis by the SBOE. It must be borne in mind that section 507(a)(8)(E) grants priority to "allowed unsecured claims of governmental units for . . . (E) an excise tax (i) on a transaction . . ." Under 11 U.S.C. § 101(5)(A), the term "claim" means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . ." The SBOE possessed a "claim" for bankruptcy purposes from and after the time the cigarettes were

//

distributed in 2007 and 2008, even though the claim had not yet been liquidated through the SBOE's audit, appeal and assessment procedures and processes.

Here, a return was required to be filed by Debtor pursuant to the requirements of California Revenue and Taxation Code section 30182(a). The return for the most recent period that was under audit by the SBOE was the return for cigarettes and tobacco products distributed during the calendar month ending November 30, 2008. This return was last due on December 25, 2008 (or perhaps December 26, 2008 given that December 25 is Christmas). December 26, 2008 is more than three years before the petition date of May 20, 2016, so the cigarette distribution taxes for the month of November 2008 are outside the three-year statutory time period unless that time period was tolled in some manner. Similarly, the cigarette distribution taxes for months earlier than November 2008 (going all the way back to the earliest month, January 2007) are likewise outside the statutory time period unless that time period is tolled in some manner.

2. <u>Is the Three-Year Time Period of 11 U.S.C. § 507(a)(8)(E)(i) Tolled By the "Flush Language" of 11 U.S.C. § 507(a)(8)?</u>

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended 11 U.S.C. § 507(a)(8) to add the following statutory language at the end of paragraph (8):

> An otherwise applicable time period specified in this paragraph shall be suspended for any period during which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax as a result of a request by the debtor for a hearing and an appeal of any collection action taken or proposed against the debtor, plus 90 days; plus any time during which the stay of proceedings was in effect in a prior case under this title or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days.

This is sometimes referred to by bankruptcy tax practitioners as the "flush language" of section 507(a)(8) because the text is flush against the margin as opposed to being indented as are the various subparagraphs of section 507(a)(8).

In enacting the flush language, Congress intended to codify the rule established in *Young v. United States,* 535 U.S. 43, 122 S. Ct. 1036, 152 L.Ed.2d 79 (2002). *Cal. Franchise Tax Bd. v. Kendall (In re Jones)*, 657 F.3d 921, 926 (9th Cir. 2011). The Supreme

Court held in *Young* that because the automatic stay under Bankruptcy Code section 362 prevented the Internal Revenue Service from taking steps to protect its claim, the three-year lookback period was equitably tolled for the length of the bankruptcy proceeding. *In re Jones, supra,* 657 F.3d at 926.

Note, however, that in enacting the flush language Congress went beyond merely codifying *Young*. Congress also extended the tolling to circumstances in which a governmental unit was prohibited under applicable nonbankruptcy law from collecting a tax "as a result of a request by the debtor for a hearing and an appeal of any collection action taken or proposed against the debtor…" 11 U.S.C. § 507(a)(8).

There is no evidence before the Court that the Debtor was in a prior bankruptcy proceeding in which the SBOE's collection rights were impeded by the automatic stay with respect to the taxes at issue here or that a confirmed chapter 11 plan of the Debtor precluded SBOE collection action. Rather, what is at issue here is whether the SBOE was precluded by California tax law from collecting the cigarette taxes "as a result of a request by the debtor for a hearing and an appeal of any collection action taken or proposed against the debtor" within the meaning of 11 U.S.C. § 507(a)(8).[7]

The CDTFA argues that the flush language of section 507(a)(8) tolls the running of the three-year time period of 11 U.S.C. § 507(a)(8)(E) because the Debtor petitioned the SBOE Appeals Division for a redetermination of the excise tax deficiencies proposed by the audit division and that therefore the period is tolled all the way from September 20, 2010 (December 21, 2010, the date of the petition for redetermination, plus 90 days) through the petition date of May 20, 2016. If this analysis is correct, deficient cigarette taxes for the months of August 2007 through November 2008 would still be eighth priority taxes, and only

---

[7] *Compare In re Paradis,* 477 B.R. 295, 297 (Bankr. D. Me. 2012) where a bankruptcy court considered whether the filing of an offer in compromise – an event that stops Internal Revenue Service collection activity – is a "request by the debtor for a hearing" as defined in 11 U.S.C. §507(a)(8)'s flush language. The bankruptcy court concluded that it did not because the offer in compromise process "entails no hearing."

11

cigarette taxes for the period from January 2007 through July 2007 would be a nonpriority general unsecured claim.[8]

There is no doubt that the SBOE (and later the CDTFA) was prohibited under applicable California law from collecting the cigarette tax deficiencies at issue here with respect to <u>all</u> time periods preceding the petition date of May 20, 2016. This follows from the fact that the taxes at issue did not become due and payable before the petition date, as explained above. Under California law, collection action cannot be taken until the taxes become due and payable. CAL. REV. & TAX. CODE §§ 30301 *et seq.*[9]

That is not the end of the analysis, however. Under the flush language of section 507(a)(8), the prohibition against collection action must occur " . . . <u>as a result of a request by the debtor for a hearing and an appeal of any collection action taken or proposed against the debtor</u> . . ." (underscoring added by the Court). The Debtor made a request for a hearing and took an appeal – but the request did not in any way relate to any "collection action . . . taken against the debtor." The Debtor's request for a hearing and appeal related to <u>liability</u> for the cigarette taxes, not <u>collection</u> of the cigarette taxes. More important, no collection action had yet been taken against the Debtor at the time the appeal was filed and the hearing requested, so the appeal certainly did not relate to collection action that had already been taken against the Debtor – because there was none.

The phrase "collection action . . . proposed against the debtor" raises more troublesome questions. Certainly, future collection action by a taxing authority against a taxpayer is always an issue lurking in the background any time the taxpayer and taxing authority are in a dispute over the taxpayer's liability for taxes. The dispute is not merely academic. If the taxing authority correctly determines that the taxpayer has a tax deficiency,

---

[8] CDTFA Response at page 15 of 24, lines 17-20. Note that if tolling commenced on September 20, 2010, a three-year period of time would have elapsed between September 20, 2007 and September 20, 2010, implying that taxes reported on tax returns due on or after September 20, 2007 (tax period August 2007 and succeeding tax periods) would be within the three-year window whereas tax reported on tax returns before September 20, 2007 (tax period July 2007 and earlier tax periods) would be outside the three-year window.

[9] The CDTFA agrees with these propositions. CDTFA Response at page 16-17 of 24.

Case 6:16-bk-14576-MW    Doc 234    Filed 01/31/18    Entered 01/31/18 12:07:37    Desc
Main Document    Page 13 of 14

1 collection action will follow at some point (but perhaps only after judicial determinations
2 favorable to the taxing authority in trial and appellate courts).
3      But the possibility of future collection action is not, as this Court sees it, the same thing
4 as proposed collection action.  There is no evidence the SBOE specifically or even generally
5 proposed any collection action against the Debtor prior to or during the appeal before the
6 SBOE Appeals Division.  The SBOE Decision contains no discussion of or reference to any
7 actual or proposed collection action.  All the evidence indicates that the Debtor was
8 appealing to the Appeals Division for the sole purpose of reducing or eliminating its tax
9 liability for cigarette taxes.  An appeal of proposed collection action would have been
10 obviously unripe not only for the reason that no such action had been proposed by the SBOE
11 but also because the Debtor and the SBOE were still arguing about how much the Debtor
12 owed in unpaid cigarette taxes.  To argue about collection at that point would have been
13 putting the cart before the horse.
14      In summary, although the SBOE (and later the CDTFA) were prohibited from
15 collecting the cigarette tax deficiencies at issue here from Debtor, this prohibition did not
16 arise because the Debtor had requested a hearing and filed an appeal of any <u>collection
17 action taken or proposed to be taken</u> against it.  The prohibition arose because the Debtor
18 had requested a hearing and filed an appeal to contest its <u>liability</u> for cigarette taxes, and
19 under California law as discussed above the net result is that taxes do not become due and
20 payable until an appeal to the SBOE Appeals Division is decided and becomes final and 30
21 days have elapsed following mailing of notice of the results of the appeal to the taxpayer.
22 CAL. REV. & TAX. CODE §§ 30263, 30264.
23      The CDTFA argues that "Debtor's strict construction [of section 507(a)(8)(E)] would
24 lead to absurd results.  CDTFA would lose its priority status for a cigarette tax whenever a
25 taxpayer files a petition for redetermination of tax, waits for 3 years to expire, and then files
26 for bankruptcy.  This goes against clear congressional intent."  The California Department
27 of Tax and Fee Administration's Response to Debtor's Motion to Determine Whether Claim
28

No. 11 is Entitled to Priority Status Under Section 507(a)(8), Docket No. 210, filed October 31, 2017, at page 6 of 40, lines 25-27.

It is far from clear that applying the plain meaning rule to section 507(a)(8)(E) leads to a result at odds with congressional intent.  When Congress wanted to give taxing authorities time to conduct audits and make assessments without jeopardizing their right to priority status for their claims in a bankruptcy proceeding, Congress knew how to accomplish this and in fact did so, but only in the context of taxes measured by income or gross receipts. Section 507(a)(8)(A), relating to the priority status of income and gross receipts taxes, makes a tax not assessed before the petition date but assessable after such date, by applicable law or agreement, an eighth priority tax.  11 U.S.C. § 507(a)(8)(A)(iii).  Had such a provision been placed in section 507(a)(8)(E), the taxes at issue here would be eighth priority taxes.  But Congress did not include such provisions in section 507(a)(8)(E) nor in section 507(a)(8)(B) (property taxes), section 507(a)(8)(D) (employment taxes) nor section 507(a)(8)(F) (customs duties).  Congress's failure to include statutory language in subparagraphs (B), (D), (E) and (F) of section 507(a)(8) parallel to section 507(a)(8)(A)(iii) or its equivalent appears to be quite intentional and not something that was accidentally overlooked.

For the reasons stated above, the Motion is granted.

**IT IS SO ORDERED.**

###

Date: January 31, 2018

Mark S. Wallace
United States Bankruptcy Judge